Cameron vs. Mount.

CAMERON, Appellant, vs. MOUNT, Respondent.

*November 13 — November 28, 1893.*

(1) *False representations: Warranty: Knowledge of falsity: Action, tort or contract?* (2) *New trial: Terms.*

1. The complaint alleged that plaintiff's husband wished to buy a kind and gentle road horse for her; that defendant offered him a horse and warranted to the plaintiff that such horse was kind and gentle and free from any tricks and bad habits and was perfectly safe for a lady to drive, and invited her to get into his buggy and drive the horse; that plaintiff, relying on said representations and warranty, got into the buggy to try the horse, and after driving a short distance attempted to turn around, when the horse plunged and reared and upset the buggy, injuring plaintiff; and that in truth the horse was an ugly and vicious animal. *Held*, that the action was in tort, and that it was not necessary to allege or prove that defendant knew the falsity of said representations and warranty.

2. Where the reasons for granting a new trial are not stated in the order, it should impose as terms the payment of the taxable costs of the former trial.

APPEAL from the Circuit Court for *Walworth* County. The facts are stated in the opinion.

For the appellant there were briefs by *Ryan & Merton,* and oral argument by *E. Merton.*

*Warham Parks,* for the respondent, contended, *inter alia,* that a warranty must be one of the terms of a contract of sale; that it must be upon consideration; that there can be no warranty that is not a contract; and that it must be entered into and accepted by both parties as an agreement between them. *Hogins v. Plympton,* 28 Mass. 97; *Spalding v. Conant,* 146 id. 292; *White v. Stelloh,* 74 Wis. 438; *Hopkins v. Tanqueray,* 26 Eng. L. & Eq. 254, 15 C. B. 130; Parsons, Cont. (7th ed.), 621; *Congar v. Chamberlain,* 14 Wis. 258; *Morehouse v. Comstock,* 42 id. 626; *Collett v. Weed,* 68 id. 428; *Barker v. Cleveland,* 19 Mich. 230; Benj. Sales (2d ed.), 748. A verdict for defendant should have been

directed because it was not shown that there was any con-
tract of warranty, and because no deceit was practiced upon
plaintiff by defendant.   *Windle v. Jordan*, 75 Me. 149;
*Hadley v. Cross*, 34 Vt. 586, 80 Am. Dec. 699; *Ingalls v.
Bills*, 50 Mass. 1, 43 Am. Dec. 346, 355; 2 Shearm. & Redf.
Neg. sec. 494; *Case v. Stevens*, 137 Mass. 551; *Allen v. Trues-
dell*, 135 id. 77; *Pierce v. Carey*, 37 Wis. 232; *Dowling v.
Lawrence*, 58 id. 282; Hilliard, Torts (3d ed.), 34; Sackett,
Inst. to Jur. 147; *Walker v. Hough*, 59 Ill. 375.   Counsel
also cited authorities to the point that in case of injuries
by domestic animals knowledge by the owner of their
viciousness must be alleged and proved.

ORTON, J.   The complaint states the following case: The
plaintiff's husband, Claude N. Cameron, wished to buy a
kind and gentle road horse for his wife to drive.   The de-
fendant called upon the said Claude N. Cameron, and told
him that he had been informed he wished to buy a horse
for his wife, and that he had with him a kind, gentle, and
safe horse, to sell; whereupon the said Claude called his
wife, the plaintiff, to look at the horse, and she came and
looked at him and asked the defendant if the horse was
kind and gentle and free from any bad tricks and habits.
The defendant then and there represented and *warranted*
to the plaintiff that said horse was kind and gentle and
free from any tricks and bad habits, and that he was per-
fectly *safe* and well calculated for a lady to drive, and in-
vited her to get in his buggy and drive the horse herself.
The plaintiff, relying on said representations and *warranty*,
got into the buggy to drive the horse to try him, and after
driving a short distance she attempted to turn around, and
the horse made a sudden plunge, reared up, and kicked and
upset the buggy, and the plaintiff was thrown violently to
the ground, and permanently injured in her spine, and
bruised and injured in other places on her body, to her

damage of $3,000. In truth and fact the horse was an ugly, vicious, and tricky animal, and not a safe driving horse, and entirely unsuitable for a lady to drive or manage.

On the trial of the action the facts stated in the complaint were substantially established by the testimony of the plaintiff and her witnesses, and the jury found a special verdict in her favor, and her damages at $3,000. The defendant made a motion for a new trial, based on several grounds, and especially on the ground that the complaint did not state a cause of action. The court granted the motion, but without stating any grounds therefor, and without terms. The plaintiff has appealed from this order.

The briefs and arguments of counsel on both sides go to the question of the sufficiency of the complaint, it not being alleged therein that the defendant knew at the time he made the said representation and warranty that they were untrue. There was no *scienter* alleged in the complaint. The learned counsel seem to be of the opinion that this deficiency of the complaint was the real ground for the granting of a new trial. The jury found specially that the defendant knew that the representations and warranty were false, but it is conceded that there was no evidence to sustain such a finding. The learned counsel of the appellant contend that this was not a good ground for ordering a new trial of the action, and, on the other hand, the learned counsel of the respondent contend that this reason was not only sufficient for ordering a new trial, but that the plaintiff cannot recover without such an averment and proof of a *scienter*. There seemed to be great doubt on the trial, as well as here, whether the action is in tort or on contract. We are inclined to hold that such an averment and proof are not necessary to sustain the action, and that the action is in tort. The representations and warranty set out in the complaint are not strictly and tech-

nically a " warranty," as in sales of personal property. If
they were, no one would contend that it would be neces-
sary to prove that the defendant knew that the facts or
conditions embraced therein did not exist or were not true,
and the action would be on contract.  On such a warranty
the law is well settled.  But, nevertheless, they do constitute
a *warranty* of the facts and conditions embraced therein
as effectually, and are an assurance and engagement just
as positive and absolute, as a technical warranty.  To sus-
tain an action on such a warranty there is no more neces-
sity of proof that the defendant knew that his statement
was false than in the other case of a warranty.  The ac-
tion on a warranty in the sale of personal property is on
contract.  The action on a warranty relating to other mat-
ters or transactions is in tort, and the warranty is a con-
structive fraud, like a false representation.

The learned counsel of the respondent contends that no
warranty, as such, can exist except in relation to sales.  To
show that a warranty may exist in its strictness, so far
as to dispense with proof that the defendant knew its falsity,
with respect to other matters than sales, and to illustrate
the principle, the case of *Kuehn v. Wilson*, 13 Wis. 104,
may be referred to.  The defendant, as a *farrier*, treated
the plaintiff's colt, and " warranted the colt would get well
and do well," and it died within a short time thereafter
without any fault of the plaintiff.  Mr. Justice COLE said
in the opinion: " An express warranty that the colt would
get well would be an absolute engagement to make good
the loss if the colt died.  The warrantor would take the
chances and hazards," etc.  Here there is a *warranty* that
the horse was perfectly safe and well calculated for a lady
to drive, and that he was kind and gentle and had no tricks
or bad habits, and the same " absolute engagement to make
good the loss " or damage if the horse was not perfectly
safe and well calculated for a lady to drive, and " the war-

rantor took the chances and hazards" of the experiment. Such warranties constitute a class of frauds, exceptional to the common cases of mere false representations, where an intent to defraud and a knowledge that they were false must be proved. It is an absolute and unconditional engagement to make good the loss.

The following is a terse and yet comprehensive statement of the law governing this kind of warranty, taken from *Gregory v. Schoenell*, 55 Ind. 101, found in a note to 8 Am. & Eng. Ency. of Law, 793: "The law holds a contracting party liable as for a fraud on his express representations concerning facts material to the treaty, *the truth of which he assumes to know* and the truth of which is not known to the other contracting party, where the representations were false, and the other party, relying upon them, has been misled to his injury. In such a case the law holds a party *bound to know* the truth of his representations." "Whoever pretends to positive knowledge of a particular fact when he does not know it, and represents such fact to be true in order that another may rely upon it and act upon it, and does rely and act upon it, and damages flow from the false representation, the person making it is guilty of wilful deception and fraud." "If he affirms that to be true within his own knowledge which he does not know to be true, this falls within the notion of legal fraud." "If a man having no knowledge whatever on the subject takes upon himself to represent a certain state of facts to exist, he does so at his peril; and if it is done to procure some benefit to himself, or to deceive a third person, he is in law guilty of a fraud, for he takes upon himself to *warrant* his own belief of the truth of that which he asserts." "A reckless statement, made without caring whether it is true or false, is actionable." "In such cases it is not necessary to prove that the defendant knew that the representation was not true." These extracts are taken from the following cases;

in which it is held that it is immaterial whether the defendant knew the falsity of the express and positive statement which he has made, and upon which another has relied and acted to his injury: *Taylor v. Ashton*, 11 Mees. & W. 415; *Smout v. Ilbery*, 10 Mees. & W. 10; *Pawson v. Watson*, Cowp. 788; *Pulsford v. Richards*, 17 Beav. 94; *Haycraft v. Creasy*, 2 East, 103; *Evans v. Edmonds*, 13 C. B. 786; *Burrowes v. Lock*, 10 Ves. 470; *Pasley v. Freeman*, 3 Term R. 51; *Milne v. Marwood*, 15 C. B. 778; Add. Torts, 738, 739.

It has been the doctrine of the English courts a long time that when the representation is so positive and absolute as to have the force of an express warranty it is immaterial whether the defendant knew it to be false or not. The representations and warranty in this case have all the accompanying ingredients to make it an actionable fraud. The defendant invited and induced the plaintiff to drive the horse, and she did so, relying upon his representation and warranty that it was perfectly safe for her to do so, and his other assurances of the gentle character of the animal. The defendant was interested in inducing the plaintiff to drive the horse, so that, if it should happen in this instance that the horse should not exhibit any of his unruly and dangerous habits, he might sell him to the plaintiff's husband; and the plaintiff was also interested in the trial, so that she might have a gentle and safe horse to drive. The defendant assumed all the risks and hazards of the trial, and the plaintiff staked her personal safety on the truth of his representations and warranty, and her severe and permanent injuries were the proximate consequences. This is a very strong case for the application of the principle of the law of warranty. The defendant made his statements as of his own actual knowledge, and the plaintiff had no knowledge of the horse or his habits. There is nothing wanting in the case to make the defendant liable,

according to the authorities, if the complaint is sustained by the evidence.

The case should be tried on the true theory of what the action is, and on a correct view of the law that governs it; and there seems to have been great doubt upon the subject at the former trial. Not knowing from the order granting a new trial the grounds of it, this court cannot say that it was an abuse of the discretion of the circuit court to grant it. It would seem to be very proper, under the circumstances, that the action should be tried again. The order is erroneous in not having been made on the terms of the defendant paying all the taxable costs of the former trial. In the absence of any stated grounds for the order, the presumption is that it was made on the ground that the verdict is against the weight of the evidence, or on the merits; and in such case the order should have been made on such terms. *Garny v. Katz, ante,* p. 321; *Pound v. Roan,* 45 Wis. 129; *Smith v. Lander,* 48 Wis. 587; *Schraer v. Stefan,* 80 Wis. 653.

*By the Court.*— The order of the circuit court is reversed, and the cause remanded with direction to grant a new trial therein on the terms of the defendant paying all the taxable costs of the former trial.